Good morning. May it please the Court, I'm Todd Roberts, law firm of Ropers Majeski Conan Bentley in Redwood City, California. I'd like to reserve three minutes. We represent Katinka Hosszu. She is a Hungarian national. She's a world champion swimmer. Last summer she won three gold medals and a silver in the Summer Olympics, during which the District Court dismissed her complaint for defamation and false light. And in dismissing the case, the District Court substituted its own narrow interpretation of the allegations of the complaint, and I would say stingy construction, as opposed to the light most favorable to Ms. Hosszu, but should be generous. And from the perspective of the average reader or the reasonable reader, and the District Court order found only that, Casey Barrett's article strongly suggested that Katinka was cheating without actually saying so. I think that in that regard, my It's a question of fact for the jury, and that's how we would like this Court to review the complaint in this instance, because there are multiple statements that clearly give rise to the impression that Casey Barrett is accusing Katinka Hosszu of cheating by taking performance-enhancing drugs. I understand your argument on the false light in terms of creating the impression, but generally defamation requires a false statement of fact. What is the false statement of fact that's made in the article? The false statement of fact is the implication that she is cheating. Now I understand your argument about the implication, but are there any factual errors in the article themselves? I mean, what seems to me is that the recitation of facts everyone concedes is accurate. His gloss on the facts is what's in contest, but generally speaking in a defamation case, you have to have a false statement of fact that has defamatory meaning. So I mean, that's why I'm giving you the opportunity. I mean, we may be proceeding on your argument that all the facts are true, but it's the implication that's at issue, but if that's where that's fine. I just want to know if there's any false statement of fact that's made in the article. I would say false, no. Incomplete, unfair, yes. And let me direct the court's attention to something that we alleged in the complaint that nowhere was mentioned by the district court in its order, and that is there are allegations in the complaint that there was a Facebook chat prior to the publication of this article between Shane World and in that connection, Mr. Marstello admitted that Swimming World consulted with an expert. And there was no way that she was doping. I read that. Yes. And that there was no way that she was doping. Doesn't that go to the issue of malice which or that the district court didn't reach? It is. In other words, if you get beyond, if you get beyond to the summary judgment stage, and if she's determined to be a public figure, you have to demonstrate that there's malice or reckless disregard for the truth, and that evidence would go to that. But how is it relevant to the elements of defamation on their face? Because it completely undercuts the implication throughout the article that Katinka Hasu is doping. And it's nowhere disclosed in the article. And there is a principle, and this is in the Milkovich case, that in order to gain First Amendment protection, the reporting or the recounting of the situation, it must be full, it must be fair, and it must be complete. And it cannot be complete when Swimming World magazine is in possession of facts that weigh in favor of Ms. Hasu being a natural swimmer, earning her medals by her determination, her work ethic, her training regimen. None of these things are mentioned anywhere in the Casey Barrett article. No effort to talk about what her training regimen is, what her schedule is, what her weight training is, what kind of mental coaching she may have, no interviews, nothing of that sort. Counsel, what do we do with the statements in the article such as, quote, secretly every cynic, and I assume that includes Barrett, hopes to be wrong. I hope my suspicions are wrong now. What do we do with those statements? And I know we're supposed to look at the whole thing, but those are kind of glaring statements that I think the other side relies on considerably to suggest that this is simply raising a question, not implying misdeeds. They do. They do rely on that. So how do you deal with that? I deal with it because I don't buy it. I don't believe it. A jury could not believe that. Look at how he wrote, for example, about Lance Armstrong. He said for years I would tell my buddies that Lance Armstrong was cheating because his performances were unbelievable, and I was right. Well, and he finishes that by saying, and I'm telegraphing to the other side, and where there's smoke, hell, you finish the cliche. So he's planting in the reader's mind there's fire, which is the implication that there's doping. Exactly. And that's one of them. The other side can think about that while it's sitting there. I think there's even a couple more glaring statements in the article that are even more clear. Casey Barrett quite clearly compares Katinka to the East Germans who were caught doping 40 years ago. He's making a movie on that subject, and in that connection he states, quote, in retrospect, and even in the present tense, it was beyond obvious what was going on. I submit to you that an average reader would understand this to mean that in retrospect, referring to East Germans, in the present tense as referring to what he calls Exhibit A, Katinka. But it all is made clear in context that that's his opinion. That's different from false facts. Well, it is, but it... Is he not free to express his opinion? He is. There are all kinds of problems going on these days in sports elsewhere, where you want a free press that can express opinions about what's going on and say, you know, I can't prove this, I don't know it, but it seems to me that when somebody acts in this manner, it requires further investigation. That's the kind of press we need desperately these days. Well, the further investigation should have happened in this particular case, and I'm not... I don't want to dismiss the First Amendment, but my client also has a reputational interest. She is deserving of dignity and respect in the same way, and I think that's an equal interest to the First Amendment. The First Amendment doesn't say that every public figure deserves dignity and respect. You can speculate about the motives of a public figure. You can speculate about what a public figure may be doing. That's how you expose wrongdoing, and if we shut off the press from doing that, if we try to yank their licenses, or we try to subject them to libel suits because they warn about the possibility of wrongdoing, that leads to a very undemocratic society. I agree that the First Amendment is important, and I believe wholeheartedly in freedom of the press. I do not agree that you may imply a false assertion of fact, which is the standard under UNELCO in this court, that... You don't agree you can say it's my opinion, that there may be a real problem? You can say it's my opinion, but if it implies an assertion of fact, which it does here, that's what the U.S. Supreme Court decided in the Milkovich case, that just because you couch it in terms of an opinion doesn't mean it's an opinion and it's not actionable. If it is a false assertion of a fact, as we contend here, that he is asserting that Katinka Hasu, by the evidence, demonstrates that she is taking performance-enhancing drugs. And I'd like to start, or I'd like to mention a quote out of the Partington decision. And in referring to that case and interpreting and drawing a distinction with Milkovich... Who wrote the Partington case? Justice Reinhardt. Judge Reinhardt. While the author's readers implicitly were invited to draw their conclusions from the mixed information provided, the Milkovich readers implicitly were told that only one conclusion was possible. Here, there's no mixed information at all, and we know that that mixed information, in fact, was available. So how do you distinguish this case from the run-of-the-mill sports commentary that we see all the time and hear all the time on sports talk radio, where a lot of reckless We've certainly heard commentary on television and on radio about various doping allegations. Is your standard such that that is unprotected speech all the way through? Well, it's a hard question. The hypothetical is a hard question to answer. Well, it is, but, you know, that's the reality and the harshness of sports these days, the sports commentary. It's one of the more bellicose areas we have in American life. Well, I think that actually, I understand what you're saying with respect to TV, but that also goes to the general context of the statements and where they're made. And this is, these statements were made in Swimming World magazine, the most authoritative sport or the most authoritative source for sport. It's not a docudrama, as was the case in Partington. It's not somewhere, it's not Mad Magazine. It's not satirical. No, but for example, just to take doping allegations, we've had, there were newspapers that undertook serious examinations of doping in Major League Baseball and wrote articles about it that were, recounted facts that are not unlike the facts recounted in this article and then tried to, that drew some implications. Well, they, there certainly was a full, fair and complete accounting if you're referring to the Barry Bonds book. Footnotes, research, this was not any of those things. This was point fingers at Katinka Hazoo. But there were lots of articles and lots of speculation about Barry Bonds. And it, you know, in fact, there still has been no proof about Barry Bonds. He's had a trial or two, but they've been reversed. There's been no actual conviction of Barry Bonds and no admission. But I think, you know, the chain of inquiry contained a lot of speculation, which now people sort of accept. But that public acceptance may be fair in some cases and unfair in others, but it's the only way you're going to be able to expose a lot of things that go on in our society. And, you know, what about public figures who are lying or who are doing improper things? Can you write an article saying, I think this person, you know, is a moron? This person is behaving improperly. This patient is breaking laws. But that's my opinion. I don't, I can't prove it, but I think he is. Don't we need to be able to say those things without being subject to libel suits? As long as the statements are true, as long as the report is full, fair, and accurate, it is. Well, you don't normally, when you try to expose a public figure's wrongdoing, it's corruption. You don't normally put in the article, here are the things that might point the other way. You could. I mean, that's fine. But you can also be a, you know, somebody who's a professional exposer, you know, the kind of person we need in society, who just points out the things and says, here are the things that might lead to this conclusion. At the other hand, you might get an article, it's a fair and balanced article. But I don't know of any law that says, when you want to expose corruption, you have to say at the same time, now here is the answer to why I think this. Well, I think under those circumstances, if you accuse somebody of corruption, you are subject to a defamation suit, if you don't mention any facts to support that. No, but you do mention the things that lead you to think that he may be corrupt. You may repeat the things that lead to that opinion. And if you say, you know, I can't prove it, but I think these are the things we ought to consider, and in my opinion, these are serious problems, and I can't prove it. I think that's a contribution. I don't understand why that's not something that's good for us. It is, in the context of this case, important for her reputational interest. And some of these assertions by Casey Barrett are assertions of objective fact that the courts have routinely said are actionable. I look at the Manny Pacquiao case. Well, what are the facts that are untrue? That the body change is evidence that she was. No, but the fact that the body change is not untrue. Well, there's body change because her workout regimen changed, but this is exactly the kind of statement that the court in the Pacquiao v. Mayweather case, the most factually analogous case to this one, found actionable, because the fact that Manny Pacquiao was acute. Floyd Mayweather told somebody that Manny Pacquiao's body had changed over the years. That was enough to be an implied assertion that would support a cause of action for defamation. And when you compare Katinka Hazoo to the East Germans, and that's the present tense, that's Exhibit A, you compare her to Lance Armstrong, you admit that she's passed every single doping test, and some people fail the tests. Only stupid people fail the tests. That's what he says. And that is our point with respect to I have no proof. He's really negating the import of that. Our questions have taken you over time. Thank you, counsel, but we will give you some time for rebuttal. Thank you very much. Good morning. May it please the Court, Jeffrey Becker on behalf of the Appleese, Casey Barrett, and Sports Publications International. Judge Trott, I will absolutely address a comment that you discussed a little while ago, but the first thing I'd like to do is start with a very important principle. When, as here, an author writing about a controversial occurrence fairly describes the general events involved and offers his personal perspective about some of the ambiguities and disputed facts, his statement should generally be protected by the First Amendment. When you say generally, Milkovich says that a statement may still imply a false assertion of fact, even though an opinion, even if the speaker states the facts upon which he bases an opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Isn't that what the other side is saying happened here? I don't believe they are. He says he has an opinion in one of these women rule the world's articles, and that opinion pretty clearly comes out to me as she's doping. I mean, she's in a superhuman world of her own. If she even eclipses Katie Ledecky and Michael Phelps and her regimen and how many times she swims and what she does is incomprehensible, the strip club comment, the bullshit comment, I mean, and he says, I have an opinion of her. And in the women rule the world, he talks about Shrogan and all the sisters and everything like that. And he says, but that's too much. And then he uses an interesting word. He says condemn. He's condemning HOSU, he says. Isn't he? I don't believe he's condemning HOSU. He said that. Yes, I don't believe the implication there is that he's condemning Katina HOSU. I believe what he's saying is that those people who often speak up about those who they believe may be doping are often condemned as sore losers and things of that nature. I do hear what you're saying. What do you put into the words, as I said earlier, that I telegraphed to where there's smoke? He says you make the conclusion. I mean, that's forcing the reader to say there's fire, isn't it? Well, I believe that that's what he's trying to suggest, that there needs to be an investigation to see if there is indeed fire. He didn't say investigation. He said there's fire. He says that's doping. Yes. And, Judge, when you look, I don't believe he's saying that there is doping, that he knows there's doping, that she has doped. He even destroys the only way that she can possibly have of defending herself by saying these doping tests are ridiculous. Only idiots fail them. I mean, he suggests in this context that passing the doping test is evidence that she is doping. Judge, there's a case that I believe. Is that right? I don't believe that's what he's saying. I firmly agree with what Judge Snow found, which was that Casey Barrett, as a commentator and a person who publishes a blog, is known for opinionated and expressive language that's there to provide his opinion. I don't believe he's affirmatively saying she's doping. After Milkovich, an opinion won't save you if it implies a false assertion of fact. And the false assertion of fact here is that she's doping. And Judge Snow seems to have confused that also in his discussion of that third question. I don't believe that Judge Snow did. He said doping is susceptible of factual proof or disproof, according to Milkovich. And he got off on the opinion thing. I think maybe he was in the right place, but his articulation of it wasn't that clear. Here's what I think specifically on that point. Judge Reinhart said it best in Partington, where should there not be permitted the ability to provide one's opinion on controversial subjects, the robust debate among people with different viewpoints, which is a vital part of our democracy, will be hammered. Absolutely. Of course. But then Milkovich says, but if it's an opinion that implies, doesn't necessarily directly in words accuse, implies a false assertion of fact, that's enough to go to a jury, the other side says. We have enough to go to a jury. Why isn't this enough to go to a jury? Do we accord, do we take a look at this in the light most favorable to Ms. Hozu? I think the plaintiff, Ms. Hozu, has larger problems than just that because as counsel stood up here. Do we look at the facts in the light most favorable to her in this context or not? Well, I think you look at the facts from a reasonable person standard. I think you need to look at whether a reasonable person would take these facts. Is that different from the usual summary judgment standard? We take the facts in the light most favorable to the. Well, this is not a summary judgment case. This is a motion to dismiss based on a First Amendment defamation issues. I think the court looks at Twombly and whether or not a reasonable person in this case would believe there's a plausible statement of defamation. I believe what Judge Snow did here is look at all of the facts, the general context of what Mr. Barrett is trying to say, and then the specific context of these statements. And what Judge Snow found was, first, he never says she cheated. He never says she took the drugs. Counsel made clear this is not a defamation case based on facts actually stated. It's defamation by implication. So how does that help you on the false light theory? False light theory, as you know, is completely different. False light says all the facts are true, but the implication implies a fact that maybe has defamatory meaning. I think the issue that comes up with false light comes to the fact that this is a public figure and this is a statement. Isn't that something for a summary judgment, not a 12b-6? I think it's appropriate for a motion to dismiss as well. You think, but what's the authority for that? I don't have the authority in front of me. I do believe, and I can certainly submit a letter. In other words, you hope that that's the case. I believe that's the case based authority I've reviewed. I don't have it in front of me. Normally you'd say, I mean, so they concede she's a public figure, granted. So their burden then is to show that your client acted with actual malice if they've stated a case for false light. And they purport to be able to do this through the communication. But my question is, this is a 12b-6. Judge Snell stopped them at the starting gate on their false light claim. You're asserting a public figure defense, which is perfectly appropriate. But why doesn't it go forward at least to the summary judgment? I believe the same standards that apply in defamation when it comes to the statement of an opinion are subsumed within the false light claim. Whether or not the actual malice issue comes back up, whether there's an implication or an inference, I believe at the end of the day, with the statements made by Mr. Barrett, he's still in the same position where he's stating an opinion, which is, first, I believe it's important to raise issues when someone suspects that one may be taking performance-intention drugs in sports. And I believe, based upon the materials I've reviewed, that I have a strong suspicion she has. He doesn't say that she did it. He says he doesn't have any evidence she did. He presented alternatives to that as well. What are the alternatives? Where did he present an alternative? He seems to dismiss all alternatives. Even the training regimen, that doesn't work. I mean, he's dismissed everything. Well, you just identified an alternative, which he doesn't agree with, but he identified. He asked the question. When the article was posted, he asked the question. But then he dismissed it. He dismissed it. He's permitted to dismiss the other alternatives. He's not required to say this alternative is the case. This is pure commentary. He is a sports commentator who's well-articulated on the issues of doping. He wasn't presenting an expose or a documentary. Doesn't he suggest that he's in the know and he can see things that other people can't because he's an expert? Well, he said— He's done the East German thing and all this kind of stuff. He says those in the know know what's going on. I believe he says that he's been around the block for quite a long time. Doesn't he say he's in the know? He says he's suspicious. He doesn't say he's in the know. I don't believe those exact words were used. He does say he's suspicious. He's identified issues prior with the German swimmers. He's identified issues with Lance Armstrong. At the time he did this, others didn't believe him. But at the end of the day, he should be permitted to make his statements of opinion. He may have said that there are those in the know who are talking about it, but I believe when he's talking about what he's seeing, he identifies specific information upon which he bases his opinion. That's what Judge Snow found. Judge Snow made clear he didn't say she took any drugs. He didn't say he has evidence she did. He says he's suspicious that she did, and he hopes he's wrong. Right, but that helps in your defamation case. False light is slightly different because that's designed to say to address the situation where you're implying a false statement of fact. And, you know, when he goes to say there's smoke, you fill in the blank, he's basically implying a false statement of fact. They allege. And, you know, that may be enough to get by a 12B6. Well, then that would create a great deal of false light claims of all the commentators on news stations and TV and radio that you talked about before. Every case is different. Absolutely, and in this case we have a commentator who posted an article on a blog where he's posting his opinion, which I believe is at the heart of this. There's a very important point of public policy, and free speech should be permitted. And if a commentator wants to raise hard and sometimes unpopular questions, they are allowed to do that. The hyperbole, the rhetoric, this is the same thing that came up in Crowe v. County of San Diego that both Judge Trott and Judge Thomas were on, where you pointed out the comparison to Charles Manson didn't mean that a prosecutor being interviewed on the news was saying that a suspected murderer actually committed the murder, despite the fact he's being compared to one. If Mr. Barrett is comparing Ms. Hozu to Lance Armstrong or German swimmers, the fact is he's doing this in the broader context, which under Partington we are to consider. And the broader context here is when commentators believe there's a hard and unpopular issue before us with doping, an issue of public concern, they should raise those suspicions and speak about them. That's the broader context of the entire blog post. He uses Ms. Hozu to discuss it. We have a case, unfortunately, I don't have the citation, but it says for the First Amendment purposes, the rule is the same regardless of the tort that is brought, that we first determine whether it's protected by the First Amendment. Only then do we look at the nature of the tort, because otherwise you'd destroy the First Amendment protection that you have in the defamation case by just putting it in the form of some other tort, and then there is no protection for the defamation case. And, Your Honor, I'm familiar with that. That's the Falwell case. Which case that was? Falwell. That's Falwell. And Judge Brennan in Milkovich's dissent cites it quite often. Falwell's a great case. Dodd's another one, Judge Reinhart. But those cases, they get to the summary judgment stage, generally speaking. But we still are stuck at motion-to-dismiss stage looking at the First Amendment issue and whether or not Mr. Barrett has stated something that provides an actionable tort. At the end of the day, Ms. Hosu is a self-proclaimed public figure, and when you look at the issues here, just like in Dodd's, another case that came shortly after Partington where Judge Reinhart made clear, public figures and officials, statements that might not be that wonderful to hear, they're part of the job. Just because a statement may embarrass her, may imply that he believes she's doing something wrong, does not mean at the end of the day there's a plausible claim that he's saying she did it. He's not inferring that she did it. He's saying, I have an issue with it. I'm a Cubs fan. Let's pretend for a second you're back in law school. Sure. And you're a law student and I'm a professor. And I ask you, Mr. Student, tell us what the Pacquiao case is. What are the facts and what are the holding? Well, the Pacquiao case, sure, Your Honor, the Pacquiao case involves three competitors of Manny Pacquiao. And these competitors are being interviewed before a match. And they're being asked specifically questions about the upcoming match against Manny Pacquiao. And his competitors specifically make statements that confirm they are saying Manny Pacquiao actually took the drugs. Mayweather said the Philippines have the best drugs. Was that their opinion? No, that was a statement. In fact, when the interviewer was asking, it was either Mayweather or De La Hoya, whether or not, what the difference in the body conditions were, one of them said, well, he's taking drugs. And the interviewer said they're taking. That's an inference from the body. No, no, no. The question about the body was what's the difference between your bodies? Why is there a difference? Well, the competitor said Manny Pacquiao's taking drugs. That's the statement. It wasn't an inference. It was a statement where the interviewer said he's saying the body differences are due to the drugs being there. What's the holding in the Pacquiao case? The Pacquiao case, I forget if they affirmed the non-dismissal or reversed the dismissal. But at the end of the day, they found that defamation had been stated, at least for a statement of a claim. But, again, they found competitors had affirmatively made statements. It was not defamation by implication, as counsels confirmed it is here. There's an implication in this case. It's my statement to you that Judge Snow correctly found that the implication was that Mr. Barrett believed there's no way that Ms. Hose was able to perform the way she did, the superhuman performances, without having taken something. But he confirmed he had not any evidence she did. He pointed out she's never failed a test. He presented other alternatives. And they updated the swimming article magazine to provide other people's opinions on the statement as well. The president of the Hungarian Swimming Association said, I would never question whether or not someone else was doing this. Even the president of the Hungarian Swimming Association recognized this was a question as to whether she was, not a statement that she did it. We believe that's an important point in this case. When you look at Partington and the three factors one must consider, the general context, specific context, and statements, there is no statement she did it. He says he hopes he's wrong in his suspicions. He makes very clear in a blog post to his readers that he wants to elicit discussion and debate. Judge Snow correctly found there was no statement of fact, and the implication was a commentator questions how it's possible. I went back to being a Cubs fan and watching Sammy Sosa and Mark McGuire, both chasing the home run record. I'm allowed to sit here and say, wow, if someone hit 150 home runs last year and their neck's as big as a tree, I don't see how they can do that naturally. That's what he was saying. That was the implication. He didn't have evidence she did it. No, but the difference here is he's portraying himself as an expert. You're portraying yourself as a fan. Yes, but experts do this. Congratulations, by the way. Thank you very much. I'm glad to have been here today. I apologize to those in Washington. But at the end of the day, experts, commentators, and people that are speaking on controversial issues of public opinion and public concern are allowed to express their opinions. That creates the robust debate that Partington stands for, that we found in the Thomas case that you were on, in Dodd's, in the Crow case. All of these cases decided by the Ninth Circuit find the First Amendment is important, especially these days. At the end of the day, Judge Snow correctly found that our clients did not state that Ms. Hozu had taken any PEDs. They were suspicious, and they asked for discussion and debate. We ask that you please affirm the district court's ruling. Thank you. Thank you, counsel. We'll hear rebuttal. I'll put on three minutes. We'll give you three minutes. Thank you. Let me ask you a question. If somebody says someone else is a moron, is that a defamation? Is that a question of fact or opinion? What would you do if someone said flatly out, it's not my opinion, but this man is a moron. Does that person have a cause of action? Probably not. Why not? Because of the totality of the circumstances. What totality of circumstances? He says he's a moron. Well, it depends on the totality of the circumstances where. . . Truth is a defense. Not only that, he might say he's a different kind of moron. Would that be defamation? We interrupted your answer. Go ahead. My answer is it depends on the totality of the circumstances, but probably not because it's not going to be interpreted as a serious comment. Well, it certainly is serious. It isn't? The man says it about it's in an important position. That's something that people should be able to know, but maybe not. If it's defamatory and he can be sued for saying that. Moron is not susceptible to objective proof. That problem runs into the third issue. What about Pacquiao? Well, Pacquiao. . . I mean, you heard what he says about Pacquiao. Pacquiao, the case did move forward against Floyd Mayweather. And my point with respect to Manny Pacquiao is there were statements about the Philippines having the best drugs. Manny Pacquiao is Filipino. You can draw an inference that he's taking performance-enhancing drugs. It wasn't an implication in Pacquiao. It was a flat-out statement, was it? There was a flat. There was a statement by at least one of the individuals. Yes, that he is taking drugs. And the reason that Pacquiao is even closer to this case is that Mr. Barrett is a direct analogy to Floyd Mayweather in the sense that Floyd Mayweather may have particular expertise and experience in getting hit by Manny Pacquiao. Mr. Barrett is a former Olympic swimmer. He makes his living off of swimming. He runs a swim school in a swim program in New York City. Emmys for his broadcasting. He's got Emmys for his broadcasting. He holds himself out as an expert. He's making movies. He's making a movie about the East Germans doping. And he said in that context, what was happening was obvious in the past tense, and what is happening in the present tense is also obvious. Those who know, have some knowledge, should have the least protection. But if somebody without any knowledge about the subject makes the same statements, that's fine. It's okay as long as the ignorant person makes the statements. But the person who has some knowledge in the field, that's a handicap, a penalty. You're more liable to suit if you have some experience. I think it is, and here's the reason why. Wouldn't that cover the average reporter or television commentator? I think the average person, the reasonable reader, is going to give that person more credibility and the implication of defamatory conduct. You're more subject to suit if you're Mr. Hannity or you're Rachel Maddow or you're somebody who has credibility, you're more subject to a defamation suit than if it's somebody sitting in Arkansas who's known to make up stories and has no credibility. The more relied on you are at exposing corruption, the more likely you are to be the subject of defamation. If you're wrong, and I think that's right. If you're wrong, you're going to have to be very careful when you're exposing corruption because you know something about it, and the more you know, the more likely you are to be shut off by lawsuits, and therefore the less likely it will be that corruption will be exposed. Well, I'll go back to what I said earlier. It has to be a full, fair, and complete recitation of the facts, and I would just like to close by saying that— Let me ask you—we're not going to cut your time off. Okay. Take the case of Harvey Weinstein. People who have made the allegations and reported on them, are they subject to defamation because they don't include everything in the story, but they just report the allegations that have been made? Well, they're reporting on allegations asserted by third parties. I don't think so. But do they have to give in their story, what these allegations have made? Do they have to conduct a complete investigation and say that, on the other hand, here are the conflicting answers that have been given by everybody, or can they just report the facts that here are the things that have been alleged? I think under those circumstances, they could fairly report what allegations are asserted by a third party, a woman, in this case, in the case of Harvey Weinstein. This is an atmospheric allegation. It's irrelevant. But has your client suffered any damage as a result of this? I turned on television the other day and watched her winning world championships all over the place. She has, and it's pled in the complaint. She lost her sponsorship shortly after the article was published. When was that? That's a number of years ago now. It was in 2015. She thinks that she has lost sponsorship deals that were in the works at the time, and this is all outside the record. Right. I know it is. He's peeking behind the curtain. All right. So there are financial damages that will be claimed concerning loss of sponsorship. So is this primarily a tort case? From your client's perspective, is this primarily about damages or clearing her name? Well, we did demand a retraction very immediately after the article was published in Swimming World magazine. I think that it originally was about clearing her name. Okay. Anything you want to say in closing? I would just say this. Opposing counsel had on multiple prior occasions said, he's not saying this. He's not saying she's cheating. I submit to you under the appropriate standards giving Katinka Hazoo every reasonable benefit of the doubt that the article can be fairly read as defaming her and falsely accusing her repeatedly of taking performance-enhancing drugs. Thank you, counsel. Thank you both for your arguments today. They're very helpful to the panel. And the case just argued will be submitted for decision. We'll proceed to the last case on the oral argument calendar for this morning, which is CPUC versus Federal Energy Regulatory Commission.
judges: Reinhardt, Trott, Thomas